PETER HUBBELL *vs.* GEORGE W. WARREN.

If a bill in equity is brought in behalf of the plaintiff and such others having a like inter-
est as may come in to prosecute the suit, and no others come in, the plaintiff, in order to
maintain his bill, must show that he is himself entitled to equitable relief.

If no permanent restriction upon the use of an estate is created by deed, a court of equity
will not imply one under an alleged independent agreement, unless such agreement is
clearly established.

A simple agreement between the owners of adjacent estates for the erection of buildings
thereon in a uniform manner, and at a certain distance from the street, does not by impli-
cation require that the buildings shall thereafter remain in the same position or of the
same size or shape as when erected.

If the owner of two adjacent lots of land conveys one of them subject to a condition that
the buildings to be erected thereon shall be set back a certain distance from the street,
and with a warranty that the premises are free from all incumbrances made or suffered
by him, a previous mutual oral agreement between the grantor and grantee that they will
set back the buildings to be erected by them a greater distance from the street cannot be
enforced by one of them in equity.

BILL IN EQUITY brought by the plaintiff, in behalf of himself
and such others having an alleged right in common with him
as should come in to prosecute the suit, to restrain the defend-
ant from building an addition to his dwelling-house on Monu-
ment Square, in Charlestown, within less than twelve feet from
the street.

The bill alleged, amongst other things, that on the 3d of Sep-
tember 1846 the defendant conveyed to the plaintiff a parcel of
land on said square, being the whole of lots numbered forty
and thirty-nine, and a part of lot numbered thirty-eight, upon
a lithographed plan, which conveyance was made "subject to
all the conditions and restrictions set forth in the original deeds
of Thomas B. Wales and others, trustees," &c., and in which the
defendant covenanted that the premises were free from all incum
brances made or suffered by him; that said original deed con-
tained the following condition : "And to the end that there may
be an uniformity in the buildings to be erected fronting the said
Monument Square, and for determining the character and style
thereof, . . . . . . it is hereby declared that this conveyance is
upon the conditions that all buildings at any time hereafter to
be erected upon the granted premises shall be dwelling-houses

not less than three nor more than four stories high, or buildings for religious or literary purposes; that they shall all be built of brick or stone, and shall be set back ten feet from the front line;" that the defendant owned lots adjacent to those conveyed by him to the plaintiff; that before the date of the said conveyance to the plaintiff, the plaintiff and the defendant had frequent conferences as to the style, size and general character and cost of the respective houses which they intended to build, and it was finally agreed that they should be substantially alike in size and plan, and be built in a block, each to have a wing, and that they should be set back twelve feet from the front line; that the plaintiff and the defendant accordingly built and in 1847 completed expensive houses upon their respective lots, set back twelve feet from the front line, and each with a wing set back about twenty feet from the front line of the house, and they have ever since continued to live in the same; that thereafter other persons erected houses upon the same side of Monument Square, all of whom at the solicitation of the defendant set back their houses twelve feet from the front line of their lots; and that now the defendant purposes and is taking steps to build an addition in front of the wing of his house which shall extend two feet in front of the main part of his house and of the line on which the houses of the plaintiff and others on that side of the square are built, which, if completed, will be a serious and irreparable injury to them.

The answer, amongst other things, admitted the conveyances, and denied the making of the oral agreement, as alleged, and averred also that such agreement, if made, was within the statute of frauds.

No other parties came in to prosecute the suit with the plaintiff.

At the hearing, before a commissioner appointed for that purpose, much evidence was taken which it is unnecessary to recite here, the material portions of it being sufficiently stated in the opinion. The case was reserved by the chief justice for the determination of the whole court.

*I. F. Redfield & H. G. Hutchins,* for the plaintiff. 1. It is well

settled that an oral agreement relating to lands, if wholly or partly performed, is binding upon the parties notwithstanding the statute of frauds, and will be enforced in equity where its violation will be a fraud upon or produce irreparable injury to the other party.  1 White & Tudor's Lead. Cas. in Eq. (Amer. ed.) 719–746.  *Piggott* v. *Stratton,* De G., Fisher & Jones, 33. The present case falls within this doctrine.  See *Tallmadge* v *East River Bank,* 2 Duer R. 614.  The parol agreement made in the present case creates an easement in every lot on that side of the square, for the free passage of light and air, and for a prospect over these additional two feet of front land, so far as the proprietors came into the arrangement; and as fast as the lots were built upon by any proprietor on this new line, twelve feet back, the contract was fulfilled on his part, and thus became irrevocable on the part of all the others.  *Cincinnati* v. *White,* 6 Pet. 431.  *New Orleans* v. *United States,* 10 Pet. 662. *Holdane* v. *Trustees of Cold Spring Village,* 21 N. Y. 474.  2. But a written agreement to the same effect was also proved.  Before giving the deed, the defendant executed a bond to make the conveyance, provided the plaintiff should erect a house according to a certain plan therein referred to, according to which the houses of both plaintiff and defendant were to be built.  It is now said that this agreement did not require that the houses should permanently remain as built.  But they were to be of brick and stone, which imply permanence.  And even if we admit that the restriction only extends to the continuance of these houses, the defendant would have no right to pull down his house and build it anew.  3. The plan referred to shows decisively that the agreement between the parties was that the houses should be set back twelve feet.  Making a deed according to a plan is an estoppel.  See *Cooke* v. *Banks,* 7 C. & P. 481; *Barclay* v. *Howell,* 6 Pet. 498.  In this case the parties have built in conformity to the plan, and the line has been extended for a whole street.  *Clark* v. *Martin,* 1 Amer. Law Reg. (N. S.) 479.  The case of *Wolfe* v. *Frost,* 4 Sandf. Ch. 72, has been repeatedly disregarded.  The contract, therefore, is established, first, as an oral contract; then, by the written agreement

and lastly, by the reference to the plan. And, in view of this contract, the acts of the defendant amount to a fraud. Suppose that he had told the plaintiff of his intention to pull down this wing, and build up to within ten feet of the front line: would the plaintiff have consented? How did the defendant suppose that the plaintiff understood the agreement? Certainly he knew that the plaintiff understood the restriction to be perpetual.

*S. Bartlett,* for the defendant. 1. The supposed engagements of the defendant were prior in date to the bond and deed, and therefore must be deemed to have been merged. *Patching* v. *Dubbins,* Kay, 1. The deed contains a covenant against all incumbrances made or suffered by the defendant, and he could not enforce against the plaintiff any oral agreement of the character set up in the bill. Is the defendant bound, and the plaintiff free? 2. Assuming, for the argument, that there was a distinct oral agreement that the houses should be set back twelve feet, and forever maintained there, such an agreement does not carry with it an easement, but falls within the statute of frauds, unless withdrawn from its operation by the principles applicable to part performance. *Wolfe* v. *Frost,* 4 Sandf. Ch. 72. *Tallmadge* v. *East River Bank,* 2 Duer R. 614 ; S. C. *nom. Maxwell* v. *East River Bank,* 3 Bosw. 124. And if such agreement be executory or uncertain, the statute applies to it, although a part may have been performed. *Phillips* v. *Thompson,* 1 Johns. Ch. 131. *German* v. *Machin,* 6 Paige, 288. *Colson* v. *Thompson,* 2 Wheat. 336. 3. The testimony certainly does not establish that the two feet in question should be forever subject to a servitude. To establish a permanent servitude, a clear and distinct agreement should be shown. See *Wolfe* v. *Frost, ubi supra.* In this case, the evidence as to the terms of the agreement is conflicting; but there is no evidence to prove a permanent servitude. 4. If the plaintiff is shown to have no rights, there is an end of the suit. Adams on Eq. 258.

BIGELOW, C. J. This bill is brought by the plaintiff for the benefit of himself and of all other persons whose estates are similarly situated with his own on the same street, and are

entitled, as he alleges, to the same right or privilege as that which he sets up as belonging to the premises which are owned and occupied by himself. But as no other person has actually come in to prosecute the suit jointly with the plaintiff, it stands like a creditor's bill, and he is to be regarded as *dominus litis.* As the case is now presented the bill cannot be maintained, un less satisfactory evidence is offered of a right in him to equitable relief. Adams on Eq. 258. The control of the suit is with him as the actual plaintiff, and its determination on the present hearing must depend on the nature of the case which he has established by his proofs. On looking at the allegations in the bill, it is apparent that the sole ground on which his claim to relief rests is, that there was an agreement between himself and the defendant, not only that the houses described in the bill and belonging to them respectively should be erected on a line twelve feet distant from the street in front thereof, but that the space between said line and the street should forever remain open and unincumbered by buildings or other erections which might tend to obstruct the view or hinder the free passage of light and air over that portion of said space which belongs to the respective parties. In other words, the plaintiff alleges that he has by such agreement obtained as against the defendant a perpetual right, in the nature of a servitude or easement, over the piece of ground lying in front of the defendant's house, and between it and the street, by virtue of which he can insist that no building shall be erected thereon, and that the same shall be kept open for the benefit of the estate belonging to him. In regard to a portion of this space there is no controversy. By the deeds under which parties claim to hold their respective estates, it is made an express condition of the grant that all buildings erected on the premises shall be set back at a distance of ten feet from the line of the street. The dispute between the parties is only as to the other two feet of this space. In regard to this, the plaintiff maintains that there was an agreement entered into between the parties, not inserted in the deeds of the land, but a distinct and independent contract, made either orally or in

writing, by which the alleged right or privilege over the remaining two feet was secured to him.

In the view which we have taken of the case, it is not necessary to determine whether a court of equity will enforce an oral agreement which has been executed concerning the mode of use and occupation of real estate, notwithstanding the provision of the statute of frauds, that no right or interest in land shall be created except by an instrument in writing. We are strongly inclined to the opinion that there may be cases in which the infraction of such an agreement by one of the parties to it, after it has been completely carried into effect, may operate as a fraud on others who have acted on the faith of it, and so constitute good ground for a claim to equitable relief. But no such question arises here. The difficulty with the plaintiff's case is not so much a defect in the kind of evidence which he offers to sustain it, as in a failure to show that any agreement, either oral or written, was entered into between himself and the defendant, by which he acquired the right or privilege which he sets up as the foundation of his title to the relief which he seeks. That an agreement between owners of adjacent lands, restricting the mode of its use and enjoyment, although not entered into in the form of a covenant or condition, or so framed as to be binding on heirs and assigns by virtue of privity of estate, may nevertheless create a right in the nature of a servitude or easement in the land to which it relates, which can be enforced in equity, is now well settled in this commonwealth. *Whitney* v. *Union Railway*, 11 Gray, 359. *Parker* v. *Nightingale*, 6 Allen, 341. But to establish such *quasi* servitude or easement, it must appear, either by express stipulation or necessary and unavoidable implication, that the parties intended to impose a permanent restraint on the use or mode of occupation of their respective estates. If such restrictions should be incorporated into a grant in the form of a condition or reservation, or appended to it as a covenant real, or so inserted as to carry with it a notice to all persons claiming title in the premises that the free use and enjoyment of them is to a certain extent qualified or limited, the intent to create a servitude or privilege in its nature perpetual

would be clearly manifested. But where the agreement for such a right or interest in real property rests wholly in parol, or is in the form of a covenant in gross, or is entered into by a written contract separate and distinct from the deed or instrument by which the title is passed, it must contain a stipulation which in express terms provides that the right or privilege is to be a permanent restriction on the land to which it relates, or it must be so framed as to lead to the unavoidable conclusion that such was the intention of the parties; otherwise it would be desti-tute of the essential element of a servitude or easement designed as a perpetual burden on one estate for the use and benefit of another, and would be nothing more than an agreement for the immediate and present mode of enjoying or using the property, having relation to its situation and condition, and the purpose to which it was to be appropriated at the time when he agreement was made. If, for example, two persons owning adjoining lots of land, being about to erect dwelling-houses or stores thereon, should enter into a contract, either orally or in writing, that they would build them of similar materials and of uniform size and style of architecture, and would place them at a certain distance from the street, and in a designated position relatively to each other, such an agreement would not create any perpetual restraint on the use of the land by either of the owners. It would be completely satisfied and fulfilled, and the apparent intentions of the parties would be entirely answered, when the buildings were erected and finished according to the stipulated terms. Neither in law nor in equity could any design or purpose be imputed to the parties beyond that which was clearly expressed or necessarily implied from the agreement into which they had entered. The presumption of law as well as of sound reason would be in such case that the parties did not intend to give any greater permanence to the prescribed mode of occupying their land than might be secured by the nature of the structures which were about to be erected on the premises; and, if they were of a solid and durable character, that the owners would not be likely to change them essentially for a long period of years. But beyond this no right or privilege

would be gained by such agreement. When the contemplated structures were erected in conformity to its provisions, the object which the parties had in view would be accomplished. No breach of the contract would be occasioned by either party oɪ his assigns, if for their convenience or profit they should at any time afterwards take down the buildings and construct them in a different manner, or place them in different positions. It would be otherwise if there was a clear and distinct agreement, either express or implied, that the structures should always remain of the same size and shape, and on the same location. There would then be good ground for maintaining that all who took the estates with notice of such a stipulation should hold them subject to a duty or burden in the nature of a servitude for the benefit of the adjoining owner. But where there is no such agreement, there is nothing on which to found a claim to restrict an owner in the free and unqualified use and enjoyment of his estate.

In all the cases in the books, so far as we know, in which rights or privileges in the nature of servitudes or easements have been enforced in equity, the relief has been founded on agreements which expressly stipulated that the restriction on the use of the land should be permanent.

It seems to us, on a careful revision of the whole evidence in the case before us, that the agreement set up by the plaintiff, on which he bases his prayer for equitable relief, is not of this character. It amounts to nothing more than a stipulation between himself and the defendant that the buildings which they were about to erect on their respective lots should be built in a uniform manner, and be set back at a certain specified distance from the street. It was only a present agreement for the location and erection of the houses which the parties then had in contemplation. It contained no stipulation looking to future structures on the estates, or providing for a permanent or perpetual mode of using and occupying them. This is the fair result of the plaintiff's own statement of the verbal understanding between himself and the defendant in relation to the subject matter. The testimony of the defendant as to the written agreement which he gave to the plaintiff for the conveyance of

the lot now owned by him falls far short of proving any stipu- lation concerning the permanent occupation of the premises. It tends to show only an agreement for the construction of the houses which the parties were then about to erect on their re- spective lots.

This view of the evidence is greatly strengthened by the fact that, when the deed of the plaintiff's lot was made by the de- fendant, no stipulation was inserted by which the plaintiff was bound to set his house back further than ten feet from the line of the street. The deed contained no other condition or clause restricting the owner in the use of the estate, except such as was inserted in all the deeds of estates lying on the square on which the premises in controversy are situated. If there was a previous mutual understanding that this restriction should be extended so as to embrace two feet more of space in front of the houses than was provided for in the original grants of land on the square, it certainly is most reasonable to suppose that the parties would have industriously labored to have it inserted in the deed. This was important for both parties : to the plaintiff, that thereby he might secure the alleged right or privilege over the defendant's lot; and to the defendant, that he should not by his covenants bar himself of a similar right in and over the lot conveyed to the plaintiff. The omission of any such clause is significant to show that no permanent right or easement for the mutual benefit of the parties over their respective estates was then understood to have been agreed on between them.

But this is not the only effect on the rights of the parties to this controversy which results from the terms of the deed of the plaintiff's land which he received from the defendant. It seems to us that this deed constitutes an insuperable objection to the maintenance of this suit. It not only does not contain any stipulation restricting the plaintiff from building over the two feet of space now in controversy between the parties, but it does contain an express covenant by the defendant that this part of the estate was free from all incumbrances made or suffered by him. By this covenant, the defendant would be effectually cut off from any right which he might have had

under a previous oral or written agreement, even if any such had been proved to exist. He could not in the face of it insist that the plaintiff should not erect any building on his lot over the space of two feet immediately in front of his present dwelling-house. Against any claim of a right in the nature of a servitude or easement in the plaintiff's estate beyond a line ten feet distant from the street, the defendant's covenant would be a complete bar. By this deed, therefore, any mutual easement for the benefit of the two estates of the plaintiff and defendant, which might have been claimed under any previous agreement between them, was effectually destroyed. Its acceptance by the plaintiff was inconsistent with any such right, because it would leave the defendant's estate bound by the agreement for all time, while that of the plaintiff would be released from all the restrictions which the alleged agreement was designed to impose on it. To enforce the agreement under such circumstances, in favor of the plaintiff, would be contrary to its original purpose, and manifestly inequitable.        *Bill dismissed.*